Commonwealth of Pennsylvania *v.* Commonwealth Federal Savings and Loan Association of Norristown, Appellant.

Argued December 9, 1976, before Judges KRAMER, WILKINSON, JR. and ROGERS, sitting as a panel of three.

*Ernest L. Nagy,* with him *Gerald Krekstein, Patrick T. Ryan, Kathryn H. Levering,* and *Drinker, Biddle & Reath,* for appellant.

*Paul S. Roeder,* Deputy Attorney General, for appellee.

Opinion by Judge Kramer, March 11, 1977:

This is an appeal from an order of the Board of Finance and Revenue, dated September 27, 1974. The order denies review of the Commonwealth Federal Savings and Loan Association of Norristown's (appellant) petition for resettlement of its Mutual Thrift Institution's (M.T.I.) tax for the year ending December 31, 1972. .

The tax involved is a franchise or excise tax on the privilege of doing business in the Commonwealth.[1] The Department of Revenue (Department) included in the appellant's net earnings, upon which the tax is based, interest received on a loan to the Chester County Industrial Development Authority (Authority).[2] Appellant asserts that this interest was not properly includable as income for the determination of M.T.I. tax liability. This assertion is founded upon the fact that this income, received from an obligation of the Commonwealth, is tax-exempt by virtue of the provisions in the Act of August 31, 1971, P.L. 395, 72 P.S. §4752-2 et seq. (Act No. 94), as well as those in Act No. 102, note 2, *supra.* Appellant argues that inclusion of this income for M.T.I. purposes is a tax on this otherwise exempt income. We cannot agree.

The language in Act No. 94, 72 P.S. §4752-2, pertinent to appellant's argument, provides:

Notwithstanding the provisions of any law presently or hereafter enacted to the contrary,

---

[1] The Mutual Thrift Institution Tax Act, Act of June 22, 1964, P.L. 16, *as amended,* 72 P.S. §1986.1 et seq.

[2] The Authority was incorporated under the Industrial and Commercial Development Authority Law, Act of August 23, 1967, P.L. 251, *as amended,* 73 P.S. §371 et seq. (Act No. 102).

> all obligations, their transfer and the income therefrom . . . issued by the Commonwealth, any public authority, commission, board or other agency created by the Commonwealth, any political subdivision of the Commonwealth or any public authority created by any such political subdivision, shall at all times be free from taxation . . . except . . . [inheritance and estate taxation] . . . .

In addition, tax exemption for such obligations is also provided by the language in Act No. 102, 73 P.S. §385 (as amended by Act No. 34, April 7, 1976):

> The effectuation of the authorized purpose of authorities created under this act shall and will be in all respects for the benefit of the people of the Commonwealth of Pennsylvania, . . . and, since they will as public instrumentalities of the Commonwealth be performing essential governmental functions in effectuating such purposes, authorities shall not be required to pay any taxes or assessments upon any property acquired or used by them for such purposes, and the bonds issued by any authority, their transfer and the income therefrom, (including any profits made on the sale thereof) shall at all times be free from taxation within the Commonwealth of Pennsylvania.

Appellant's argument fails in that it does not distinguish between a direct property tax and a franchise tax. The language in the above statutes prohibits direct taxation of income received on Commonwealth obligations. The M.T.I. tax is a franchise or excise tax on the privilege of doing business in the Commonwealth. It is not a tax on property. The interest received on the Authority's bond, as such, is not being taxed. It is included in appellant's net earnings or

income from ''all sources''[3] for the sole purpose of being used as a yardstick to measure the privilege of doing business in the Commonwealth.

Inclusion in net earnings, of tax-exempt income received on Commonwealth obligations for this limited purpose, does not conflict with the provisions in Act No. 94 or Act No. 102. *First Federal Savings and Loan Association of Hazleton v. Commonwealth*, 25 Pa. Commonwealth Ct. 359, 360 A.2d 773 (1976).[4] This holding is consistent with numerous decisions on similar tax exemption statutes by the Pennsylvania Supreme Court. These cases establish the principle that property, including tax-exempt income from obligations on the behalf of this State or the United States, may be used to measure a franchise or excise tax. *See Commonwealth v. Ford Motor Co.*, 350 Pa. 236, 246, 38 A.2d 329, 334 (1944); *Commonwealth v. National Biscuit Co.*, 390 Pa. 642, 136 A.2d 821 (1957) and *Philadelphia Contributionship for Insurance v. Commonwealth*, 98 Pa. 48 (1881). Similarly, the United States Supreme Court reached this same decision, previous to Federal legislation which specifically allows tax exempt income from federal obligations to be considered in the computation of nondiscriminatory franchise taxes.[5] *Werner Machine Co., Inc. v. Director of Division of Taxation, Department of Treasury, State of New Jersey*, 350 U.S. 492 (1956).

Appellant contends that the former amendment to Act No. 102[6] demonstrates the Legislature's original intent to exclude tax-exempt income from even excise taxes such as the M.T.I. tax. This amendment provid-

---

[3] 72 P.S. §1986.3.

[4] Though the application of Act 102 was not directly considered in *Hazleton, supra*, the analysis is the same (i.e., the income is being used only as a measure and is not subject to taxation).

[5] 31 U.S.C. §742.

[6] Act of December 19, 1975, P.L. 576, No. 165 (repealed by the Act of April 7, 1976, P.L.    , No. 34.)

ed that, ". . . the foregoing exemption from taxation includes, but is not limited to, property taxes, excise taxes for the privilege of doing business, and taxes measured or determined by income or net earnings." This Court held in *Hazleton, supra,* that this amendment was an attempt by the Legislature to change the law, which previously allowed excise taxes to include exempt income in measuring tax liability. The assertion that the amendment's purpose was to clarify the Legislature's original intent in passing Act No. 102 was specifically rejected. This decision by the Court was subsequently supported by the retroactive repeal of the amendment by the Legislature.[7] This repeal also serves to demonstrate the Legislature's ability to provide for its precise meaning in Act No. 102.

Appellant's reliance on *Arthurs v. Pittsburgh,* 185 Pa. Superior Ct. 85, 138 A.2d 200 (1958), is misplaced. The court held in that decision that a tax by the City of Pittsburgh on tax exempt income from Commonwealth obligations was invalid. The holding was based, however, on the fact that the ordinance at issue was an earned income tax and as such was a direct tax on exempt income. This is distinguished from the case now before us.

Finally, it should be noted that this Court has taken cognizance of appellant's argument that inclusion for purposes of the M.T.I. tax will subject this exempt income to various other taxes.[8] This Court has not been made aware of a single instance in which the taxation about which appellant speculates has occurred or has even been contemplated. This assertion therefore is not before us inasmuch as it is not yet ripe. We affirm.

---

[7] Id.

[8] Appellant argues that the following will also subject the exempt income to taxation: (1) The Personal Income Tax, (2) The Corporate Net Income Tax, and (3) The Net Earnings Tax.

## ORDER

AND Now, this 11th day of March, 1977, the decision of the Board of Finance and Revenue refusing appellant's petition for resettlement is hereby affirmed. Unless exceptions are filed within thirty (30) days hereof, the Chief Clerk is hereby directed to enter judgment in favor of the Commonwealth and against the appellant, in the amount of $24,701.23, which is the balance on appellant's tax liability still due and owing, together with interest on the above amount at the rate of six percent, running from the date of April 15, 1973.