# NATIONAL LEATHER COMPANY *v.* COMMON-WEALTH OF MASSACHUSETTS.

No. 205.   Argued February 23, 1928.—Decided May 28, 1928.

414

*Mr. Philip Nichols,* with whom *Mr. Putnam B. Smith* was on the brief, for plaintiff in error.

A State cannot require of a foreign corporation, as a condition of doing even a purely local business within its limits, that it pay an excise tax upon or measured by property not within the jurisdiction of the State. *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194; *Southern Ry. Co.* v. *Kentucky,* 274 U. S. 76; *Western Union* v. *Kansas,* 216 U. S. 1; *Looney* v. *Crane Co.,* 245 U. S. 178; *International Paper Co.* v. *Massachusetts,* 246 U. S. 135; *Alpha Cement Co.* v. *Massachusetts,* 268 U. S. 203.

The inclusion of the stock of the subsidiary companies among the assets employed by plaintiff in error in business in Massachusetts, for the purpose of measuring the "corporate excess" taxable in Massachusetts, was in effect the imposition of a tax upon such stock. Under the Massachusetts law, corporate excess is the amount by which the value of the aggregate capital stock exceeds the value of the fixed assets, such as real estate and machinery, and the non-taxable securities only, and consequently tangible personal property and taxable securities are included in the corporate excess, as well as good-will and franchise value. The corporate excess of a foreign corporation doing business in Massachusetts thus determined is allocated to Massachusetts in the same proportion that the assets employed in business in Massachusetts bear to the entire assets.

Therefore, the determination of the situs of the assets of a foreign corporation not only establishes the apportionment of the good-will or franchise value, if any, as between Massachusetts and other States in which the corporation owns property or does business, but, with respect to tangible personal property and securities which would be taxable if owned by an individual resident, it settles the question whether the property is to be taxed by Massachusetts or not; and the inclusion of the stock of the other two companies among the "assets employed in business in Massachusetts" by plaintiff in error was thus in effect the direct taxation of such stock in the hands of plaintiff in error.

The stock of the other companies owned by plaintiff in error was not within the jurisdiction of Massachusetts. A corporation has its domicil in the State which created it, and even if its principal, or only, place of business is in another State, it is still a foreign corporation within such State. The primary situs of stock in a corporation is the domicil of the stockholder, and when one corporation owns stock in another, the situs of the stock so held is the State in which the corporation owning the stock was organized. *Sturgis* v. *Carter,* 114 U. S. 511; *Hawley* v. *Malden,* 232 U. S. 1; *Wright* v. *L. & N. R. R. Co.,* 236 U. S. 687.

Decisions holding that, when capital in the form of intangible property is regularly employed in business within a State, such property may be subject to taxation in such State, although the owner is a non-resident or a foreign corporation, are confined to credits in the form of notes or otherwise in the hands of an agent for investment and reinvestment in the regular course of business. *New Orleans* v. *Stempel,* 175 U. S. 309; *Bristol* v. *Washington County,* 177 U. S. 133; *State Board* v. *Comptoir Nationale D'Escompte,* 191 U. S. 388; *Scottish Ins. Co.*

v. *Bowland*, 196 U. S. 611; *Metropolitan Life Ins. Co.* v. *New Orleans*, 205 U. S. 395; *Liverpool Ins. Co.* v. *Orleans Board of Assessors*, 221 U. S. 346; *DeGanay* v. *Lederer*, 250 U. S. 376.

This principle has never until the present case been extended to shares of stock in corporations.

The fact that the stock certificates happened to be kept in Massachusetts is of no importance, at least when the stock was not commonly bought, sold, or pledged by the taxpayer and there was no business advantage in keeping the stock certificates in any particular place. *Kennedy* v. *Hodges*, 215 Mass. 112; *Clark* v. *Treasurer, etc.*, 218 Mass. 292; *Welch* v. *Treasurer, etc.*, 223 Mass. 87.

In a case like the present; the ownership of the stock is merely a means of enjoying a beneficial interest in the business and property of the corporations, and liability to taxation, if it exists at all, must be based on the residence of the taxpayer, the State in which the corporations were organized, or the State in which their property was located or their business carried on. The first two possible grounds of taxing jurisdiction admittedly do not exist in the present case.

Jurisdiction for tax purposes over the shares of a foreign corporation owned by a non-resident cannot, however, be made to rest on the situs of the corporate property or the doing of corporate business within the taxing State. *R. I. Hospital Trust Co.* v. *Doughton*, 270 U. S. 69.

The " corporate fiction " cannot constitutionally be disregarded and the plaintiff in error treated as the owner of the property of its subsidiaries, or as carrying on business through them as its agents, because it owns all of their corporate stock, when such a course is not necessary to do justice, but will work gross injustice by taxing the same property twice.

It is well settled that a corporation is not doing business within a State merely because a subsidiary corporation of which it owns all the stock is doing business in such State. *Philadelphia, etc. Ry. Co.* v. *McKibben*, 243 U. S. 264; *People's Tobacco Co.* v. *American Tobacco Co.*, 246 U. S. 79; *Cannon Mfg. Co.* v. *Cudahy Co.*, 267 U. S. 333.

The present case is not only one of double taxation, but of double taxation coupled with an arbitrary discrimination. If the Commonwealth is justified in disregarding the " corporate fiction," it should carry such disregard to its logical conclusion and tax affiliated companies on their combined assets and corporate excess, and not recognize the corporate fiction in taxing the subsidiaries and disregard it in taxing the parent corporation, and thus, in effect, tax the same property twice when all other property in the Commonwealth is taxed but once.

There is a peculiar injustice in the application of this tax in that the value of the tanneries—the real estate and machinery—which are locally taxed, is deducted from the value of the corporate excess of the corporations which own them, and if plaintiff in error were treated throughout as the owner of the assets, instead of the stock, of the subsidiaries, the tanneries as well as the other property of the subsidiaries would be taxed but once. But here, while it is treated as the owner of the assets of the subsidiaries situated in Massachusetts for the purpose of acquiring taxing jurisdiction, it is treated as the owner of the stock of the subsidiaries for the purpose of measuring the tax, so that the value of the assets locally taxed cannot be deducted from its corporate excess.

The decision of the Supreme Judicial Court of Massachusetts rests upon a misconstruction of the statute which, if controlling, renders the statute clearly unconstitutional.

*Mr. James S. Eastham,* Assistant Attorney General of Massachusetts, with whom *Messrs. Arthur K. Reading,* Attorney General, *F. Delano Putnam,* and *R. Ammi Cutter,* Assistant Attorneys General, were on the brief, for defendant in error.

The Commissioner of Corporations and Taxation has determined as a matter of fact that the shares of stock in the subsidiary corporations were assets of the plaintiff in error actually employed in business in Massachusetts. His finding should not be upset unless plainly wrong as a matter of fact, or unless as a matter of law shares of stock are assets incapable of being employed in business outside the State of the domicil either of the corporation owning or of that issuing the shares.

It is within the power of a State to levy an excise tax upon a foreign corporation for the privilege of doing intrastate business within the State, including as part of the measure of the tax intangible assets employed in business within the State by the taxpayer corporation. Such intangible assets may properly include shares of stock, belonging to the taxpayer, in foreign subsidiary corporations (if such shares are employed as capital of the taxpayer within the State) without in any way depriving the taxpayer corporation of its property without due process of law.

The Massachusetts corporation tax, contained in General Laws (1921), c. 63, is an excise tax measured in part by corporation excess. Shares of stock may be used in a place where they are subject to control. They may be subject to control outside the State of their technical *situs.* In a business sense, certificates of stock represent capital; they have an intrinsic value commensurate with the value of the shares which they represent—and thus may become the basis upon which the owner of the shares is enabled to obtain credit at the place where the certificates are found.

The ownership of shares in subsidiaries may well be for the purpose of exercising control of certain processes essential to the conduct of business within the taxing State by the parent company. Like other intangibles, shares of stock may acquire a "business situs" outside the domicil either of the stockholder or of the corporation issuing the shares.

The facts presented by the record show clearly that the Commissioner of Corporations and Taxation was warranted in finding that the shares in the subsidiary companies were employed in business within Massachusetts during the years in question.

Mr. Justice Sanford delivered the opinion of the Court.

The National Leather Co., a Maine corporation, applied by two petitions to the Supreme Judicial Court of Massachusetts for Suffolk County,[1] for the abatement of portions of the taxes that had been exacted of it by the commissioner of corporations and taxation, under Chapter 63 of the General Laws, for the privilege of carrying on business in Massachusetts in the years 1922 and 1923. The petitions alleged that the statute as applied was an attempt to tax property not within the jurisdiction of Massachusetts and repugnant to the Fourteenth Amendment. The cases were consolidated, and at the hearing, by order of the presiding justice, were reserved for determination by the full court upon the pleadings and an agreed statement of facts. The court in banc sustained the excise, 256 Mass. 419; and in accordance with its rescript the court for Suffolk County dismissed the petitions. The writ of error was properly directed to the latter court. See Davis v. Cohen Co., 268 U. S. 638, 639.

The statute provides that every foreign corporation shall pay annually " with respect to the carrying on or

---

[1] These proceedings were instituted under G. L. c. 63, § 77.

doing of business by it within the commonwealth," an excise consisting in part of an amount " equal to five dollars per thousand upon the value of the corporate excess employed by it within the commonwealth," which is defined as " such proportion of the fair cash value of all the shares constituting the capital stock . . . as the value of the assets, both real and personal, employed in any business within the Commonwealth . . . bears to the value of the total assets of the corporation," with certain exceptions not here material.   § 30, cl. 4; § 39(1).

The business of the National Leather Co.—hereinafter called the petitioner—was the purchasing of hides and skins, having them tanned by other companies, and selling the leather through the tanners.   It operated no tanneries itself.   Its business was conducted wholly in Massachusetts; its business offices were located there; and it carried on no active business outside the State.   Among other properties it owned the entire capital stock, except a few qualifying shares, of the A. C. Lawrence Leather Co. and the National Calfskin Co., two other Maine corporations.   Its upper leather was tanned chiefly by these two subsidiary corporations; and its sole leather by other corporations in which it had no interest.

The business of the Lawrence Company was the tanning of hides, principally for upper leather, which it sold on a commission basis.   Most of its tanning was done for the petitioner.   Its tanneries were in Massachusetts, where it was engaged in business, but it was qualified to do business and had selling branches in four or five other States.   The business of the Calfskin Company was tanning hides of the petitioner.   Its tannery was in Massachusetts, where it was engaged in business.   It had no property or selling branches outside Massachusetts, and was not qualified to do business in any other State except Maine.

In determining the portions of the excises based upon "corporate excess" the commissioner included all the capital stock of the Lawrence Company and the Calfskin Company owned by the petitioner, as part of the assets employed by it in business within Massachusetts; but did not include any stocks owned by it in other corporations which were not engaged in business within Massachusetts.

The petitions for abatement were directed solely to the portions of the excises assessed by reason of this inclusion of the capital stocks of the Lawrence and Calfskin Companies.

The petitioner contends that the inclusion of these stocks as part of the assets employed by it in business in Massachusetts for the purpose of measuring its taxable corporate excess is in effect the imposition of a tax upon the stocks themselves; that these stocks, as distinguished from the assets of the subsidiary corporations, had no situs in Massachusetts and were not within its jurisdiction; and that the statute, so applied, is therefore beyond the power of the State and violates the due process clause of the Fourteenth Amendment.

The Massachusetts court, in holding that the statute had been properly construed and applied by the commissioner and in sustaining the validity of the taxes, said: "The commissioner . . . in determining under G. L. c. 63, § 44, the 'corporate excess employed within the Commonwealth, by every foreign corporation' doing domestic business here is required to give those words the definition and to follow the legislative mandate in G. L. c. 63, § 30, cl. 4. . . . The petitioner held the stock in its two subsidiary corporations for the lawful prosecution of its business. All the facts recited lead to the conclusion that there was no error of law in including the shares of stock for computation of the excise of the petitioner. The entire business of the petitioner was con-

ducted in this Commonwealth, the certificates of stock of the subsidiary corporations actually were kept here, all the business of one and a large part of the business of the other was carried on here, and the petitioner made use of the activities of these subsidiary corporations as essential parts of its business. Without discussing whether any one or more of these factors standing alone would justify the method employed in ascertaining the excise, their collective force is sufficient to that end. The interpretation of the words of the statute requires this result. . . . The language of the statute . . . is explicit and its meaning is not clouded or obscure. It cannot render subject to direct taxation property not within the jurisdiction; but where other essential elements are present the excise is justified. . . . Apart from the domicil of the several corporations and looking for the moment only at tangible property and its physical location, there is jurisdiction to sustain taxation in this Commonwealth. All the business of the petitioner and of one of its subsidiaries and a principal part of the business of the other subsidiary is conducted in Massachusetts. . . . [There] is no direct tax on property, but an excise on a foreign corporation, levied solely on the privilege of doing domestic business within this Commonwealth, measured in part on the value of stock employed in business in this Commonwealth. . . . The question, whether the value of the stock of the Lawrence Company attributable to that part of its business and property in other States ought to have been deducted is not presented on this record. That relates to overvaluation, as to which a different remedy is provided . . . G. L., c. 63, § 71."

For present purposes it may be assumed that the capital stocks of the two subsidiary companies had no situs in Massachusetts which brought them within the jurisdiction of that State for the purpose of imposing a direct property tax. See *Rhode Island Trust Co.* v. *Doughton,*

270 U. S. 69, 80. But here the statute does not impose any direct tax upon these stocks and, as construed by the Massachusetts court, merely treats them as assets employed by the petitioner in its business within the State, and therefore requires that they be included when the total assets so employed by it are computed for the purpose of arriving at the proportionate part of the value of its own capital shares—determined by comparing the assets employed in business within the State with the total assets wheresoever employed or located—on which the excise for the privilege of carrying on its business within the State is imposed.

It is settled law that a State may lawfully impose upon a foreign corporation a tax for the privilege of doing business within its borders which is measured by the proportionate part of its total gross receipts that are received within the State, *Maine* v. *Grand Trunk Ry. Co.,* 142 U. S. 217, 228; or by the proportionate part of its total capital stock which is represented by the property located and business transacted within the State, *Hump Hairpin Co.* v. *Emmerson,* 258 U. S. 290, 293, *American Mfg. Co.* v. *St. Louis* (C. C. A.), 8 F. (2d) 447, 450; or by the proportionate part of its total net income which is attributable to the business carried on within the State, *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113, 120, *Bass, etc. Ltd.* v. *Tax Comm.,* 266 U. S. 271, 282.

Here both the commissioner, the administrative officer charged with the enforcement of the statute, and the Massachusetts court, have found that the capital stocks of the two subsidiary companies were employed by the petitioner in carrying on its business within Massachusetts. We find no adequate reason for disturbing this conclusion. On the contrary, looking to the substance of the transactions and not merely to form, we think that the petitioner, through its ownership of the capital stock of the two subsidiary corporations and the control which it

thereby exercised over them, did, in a very real and practical sense, employ these stocks as an instrumentality in carrying on its business within Massachusetts—to the extent, at least, that the controlled activities and property of the subsidiary corporations were within the State. *Cf. Edwards* v. *Chile Copper Co.*, 270 U. S. 452, 456. And since the Massachusetts court did not determine whether the value of the stock in the Lawrence Company attributable to that part of its business and property in other States should have been deducted, for the reason that, as to such overvaluation, if any, a different statutory remedy was provided, we have no occasion to consider that question.

It is said that under the Massachusetts statute the subsidiary corporations were subject to similar excises on their own account, and therefore there will be what is akin to double taxation. But we are not here concerned with an excise tax on the subsidiary corporations and need not consider its constitutional propriety either independently or in connection with the excise against the petitioner.

*Judgment affirmed.*

Mr. Justice McReynolds is of opinion that the effect of the challenged judgment is to tax property beyond the jurisdiction of Massachusetts, and that therefore it should be reversed.