Vernon L. Jarboe General Counsel Department of Revenue 915 S.W. Harrison Street Topeka, Kansas 66612-1588
Dear Mr. Jarboe:
You request our opinion regarding the propriety of interpreting K.S.A.79-1109 to require national banking associations to add the amount of the tax imposed by K.S.A. 79-1107 and paid the previous year to federal adjusted gross income when computing "net income" under K.S.A. 79-1109
for purposes of determining the amount of the K.S.A. 79-1107 privilege tax. You refer to Department of Revenue Notice 94-08, advising privilege taxpayers covered by K.S.A. 79-1107 et seq. that the addback is required, and ask the following questions:
 "1) Does the above addback described in Notice 94-08 cause 12 U.S.C. § 548, 31 U.S.C. § 3124, or the state or federal constitutions to be violated?
 "a) Does the above addback convert the privilege tax from a `franchise tax' into an income tax contrary to 31 U.S.C. § 3124(a)(1)?
 "b) If domestic insurance companies are not required to add back to income the taxes they pay under K.S.A. 40-2801 et seq., is there unlawful discrimination against privilege taxpayers if they are required to addback their Kansas privilege taxes?
 "2) If the Department has not enforced the above addback since the time K.S.A. 79-32,117(b)(ii) was amended in 1980 (L. 1980, ch. 316, sec. 12), is the Department now prohibited from enforcing the addback modification?"
K.S.A. 79-1107 provides in part:
 "Every national banking association and state bank located or doing business within the state shall pay to the state for the privilege of doing business within the state a tax according to or measured by its net income for the next preceding year to be computed as provided in this act.
. . . .
 "The tax levied shall be in lieu of ad valorem taxes which might otherwise be imposed by the state or political subdivisions thereof upon shares of capital stock or the intangible assets of national banking associations and state banks. . . ."
For purposes of computing this tax, "net income" is defined by K.S.A.79-1109 as the Kansas taxable income of corporations as set forth in K.S.A. 79-32,138, with specified adjustments not relevant to this inquiry. K.S.A. 79-32,138 provides that the Kansas taxable income of a corporation shall be the corporation's federal taxable income for the taxable year with certain modifications. The specified modifications include those set forth in subsection (b) of K.S.A. 79-32,117, dealing with resident individuals. K.S.A. 79-32,138(b)(i). K.S.A. 1993 Supp.79-32,117(b)(ii), as amended by L. 1994, ch. 265, sec. 19, in turn requires adding to federal adjusted gross income "[t]axes on or measured by income or fees or payments in lieu of income taxes imposed by this state or any other taxing jurisdiction to the extent deductible in determining federal adjusted gross income and not credited against federal income tax." [We note that K.S.A. 79-32,138 also modifies corporations' federal taxable income by subtracting those items subtracted by K.S.A. 1993 Supp. 79-32,117(c), which includes the amount of any refund or credit for overpayment of taxes on or measured by income or fees or payments in lieu of income taxes to the extent included in gross income for federal income tax purposes.]
In our opinion these statutes clearly require the tax imposed by K.S.A. 79-1107, which is measured by income, to be added to the bank's federal adjusted gross income when determining its "net income," and therefore will be considered in determining the bank's tax liability under K.S.A. 79-1107. It has been suggested by the Kansas bankers association (KBA) in a letter to this office concerning your opinion request that K.S.A. 1993 Supp. 79-32,117(b)(ii) requires only taxes paid in lieu of income taxes to be added to federal adjusted gross income and that because K.S.A. 79-1107 taxes are paid in lieu of ad valorem taxes, K.S.A. 79-32,117(b)(ii) does not apply. However, K.S.A. 1993 Supp.79-32,117(b)(ii) refers to taxes on or measured by income or fees or
payments in lieu of income taxes. Use of the conjunctive "or" indicates legislative intent to include either those taxes measured by income or any payments that are made in lieu of income taxes, not just taxes measured by income that are themselves paid in lieu of income taxes. There is nothing in the legislative history of this provision to reflect a contrary intent. The KBA also suggests that the provisions of K.S.A. 1993 Supp. 79-32,117(b)(ii) apply only to individuals' taxes measured by income or payments in lieu of income taxes and not to corporate taxes measured by income or payments in lieu of income taxes. However, the statute pertaining to corporate income taxes specifically incorporates the provisions of K.S.A. 1993 Supp. 79-32,117(b), including paragraph (ii), and, we are told, has been interpreted and applied to require corporations other than banks to add corporate franchise taxes to federal adjusted gross income when determining the Kansas taxable income of the corporation. See 1993 Corporation Income Tax Booklet, p. 5, line 3 of specific line instructions for 1993 form K-120. Again, in our opinion, the plain language of K.S.A. 79-1109, 79-32,138 and K.S.A. 1993 Supp.79-32,117 requires banks to add the tax imposed by K.S.A 79-1107 to federal adjusted gross income, to the extent deductible therefrom, when determining Kansas taxable income and the bank's tax liability under K.S.A. 79-1107.
You inquire whether the department's failure to interpret the statutes in this way over the past 14 years precludes the department from interpreting them in this way now. In our opinion, it does not. The Kansas Supreme Court has held that "[p]ast agency error does not abrogate enforcement of the law." Boswell, Inc. d/b/a Reno County Adult Care Homev. Harkins, 230 Kan. 610, 614 (1982). In Boswell, appellants argued that because the department of health and environment had customarily granted provisional licenses to adult care homes in violation of a statute administered by the agency, that it was arbitrary and capricious for the agency to deny a provisional license to the appellant for violation of the same statute. The court held that even assuming the agency had erroneously granted provisional licenses in the past, such action did not prevent the agency from enforcing the statute correctly against this appellant. Similarly, in Warburton v. Warkentin, 185 Kan. 468, 477
(1959), the Court held that an administrative agency is not precluded from taking appropriate action because of mistaken action on its part in the past. We therefore conclude that mere failure of the department of revenue to correctly interpret and enforce this provision in the past is not sufficient grounds to prevent the department from enforcing the provision correctly in the future. The fact that the legislature has amended K.S.A. 79-32,117 several times since 1980 and has not attempted to alter the department's previous interpretation of how that statute affects the determination of taxes under a separate set of statutes does not alter this conclusion. In Kansas an agency cannot effectively alter state law simply by misinterpreting it over a course of years.
You next inquire whether requiring the tax imposed by K.S.A. 79-1107 to be added to federal adjusted gross income for purposes of calculating the K.S.A. 79-1107 tax transforms the K.S.A. 79-1107 tax from a franchise tax into an income tax and therefore causes a violation of 31 U.S.C. § 3124.31 U.S.C. § 3124 prohibits taxation by a state of stocks and obligations of the United States government and the use of United States stocks and obligations in computing state taxes. One exception to this prohibition allows states to impose a nondiscriminatory franchise tax or other nonproperty tax on corporations holding federal obligations. The characterization of K.S.A. 79-1107 as a franchise tax before the department's notice requiring banks to add the amount of the tax to federal adjusted gross income for purposes of calculating the tax is not disputed. The KBA argues that adding these taxes to federal adjusted gross income is what makes the tax an income tax.
Generally "[t]he fact that income is used as the measure of a tax does not make it an `income tax.' Property, franchise, license, or occupation taxes on corporations measured by their earnings or receipts . . . are not income taxes, but are to be distinguished therefrom." 85 C.J.S.Taxation sec. 1089 (1954). If earning income must coincide with exercising the privilege of doing business for the tax to accrue, the tax is a franchise tax regardless whether it is measured by income. WernerMachine Co. v. Director, Division of Taxation, 350 U.S. 492, 494, 76 S.Ct. 534,535, 100 L.Ed. 634, 637 (1956); Educational Film Corp. v. Ward,282 U.S. 379, 388, 51 S.Ct. 170, 171, 75 L.Ed. 400, 404 (1931) (tax that is not a direct tax upon the income of a corporation in a given year, but rather a tax for the privilege of doing business in one year measured by the allocated income accruing from the business in the preceding year is not an income tax); Reuben L. Anderson-Cherne, Inc. v. Commissioner ofTaxation, 226 N.W.2d 611 (Minn. 1975), app. dsm. 423 U.S. 886,96 S.Ct. 181, 46 L.Ed.2d 118 (1975). In considering a tax virtually identical to K.S.A. 79-1107 in that it was imposed for the privilege of doing business in that state and was measured by the bank's net income for the preceding year, the Missouri Supreme Court held that it was a nondiscriminatory franchise tax which fell outside the prohibition of31 U.S.C. § 3124. Centerre Bank of Crane v. Director of Revenue,744 S.W.2d 754 (Mo. 1988). Other jurisdictions have reached similar conclusions. See Reuben, supra; Bankers Trust New York Corp. v.Department of Finance of City of New York, 593 N.E.2d 275, (N.Y. 1992), cert. den. 113 S.Ct. 202, 121 L.Ed.2d 144 (1992); Pacific First FederalSav. Bank v. Department of Revenue, State of Oregon, 779 P.2d 1033 (Or. 1989). The Missouri Supreme Court in Centerre Bank distinguished the United States Supreme Court's decision in American Bank and Trust Co. v.Dallas County, 463 U.S. 855, 103 S.Ct. 3369, 77 L.Ed.2d 1072 (1983), a case cited by the KBA, as follows:
 [In American Bank and Trust Co.] Texas imposed a property tax on bank shares. The value of the shares included the value of obligations of the United States held by a bank. The Supreme Court disallowed the tax because it was a property tax which neither 31 U.S.C. § 3124(a) nor its predecessor, 31 U.S.C. § 742 permitted. The tax imposed by Section 148.030 is not a property tax. The case is clearly inapposite." Centerre Bank, 744 S.W.2d at 757, note 2 (emphasis in original). See also American Bank and Trust Co., 463 U.S. at 864.
Similarly, the tax imposed by K.S.A. 79-1107 is not a property tax; it is a tax imposed for the privilege of doing business in this state. SeeIn re Tax Appeal of Federal Deposit Ins. Corp., 249 Kan. 752, 765 (1991) (J. Six dissenting opinion). If a national banking association or state bank ceases doing business in this state, the tax cannot be imposed in subsequent tax years even though income was earned in the year that would have been used to measure the tax. In other words, if a bank completely ceases doing business in this state prior to December 31, 1994, the franchise tax will not be imposed in 1995 even though income was received in 1994. Further, "[s]ince the tax remains the same whatever the character of the corporate assets may be, no claim can be sustained that this taxing statute discriminates against the federal obligations."Werner Machine Co., 350 U.S. at 493, 494. Further, the K.S.A. 79-1107
tax is measured by income from state, local and federal obligations alike.
Based on the above-cited authorities, we conclude that the tax imposed by K.S.A 79-1107 is a nondiscriminatory franchise tax rather than an income tax and is thus exempt from the prohibition of 31 U.S.C. § 3124. Whether or not the franchise tax is added to federal adjusted gross income for purposes of calculating the franchise tax is of no relevance.
You also inquire whether the fact that domestic insurance companies are not required to add back to federal adjusted gross income the amount of taxes they pay pursuant to K.S.A. 40-2801 et seq. renders the tax imposed by K.S.A 79-1107, which does require the addback, discriminatory and in violation of the Kansas or United States constitutions. We note that K.S.A. 79-1108 imposes a tax on trust companies and savings and loan associations that is identical to the tax imposed on banks pursuant to K.S.A. 79-1107. K.S.A. 40-2803 and 40-2804, as amended by L. 1994, ch. 38, secs. 6 and 7 respectively, define the term "net income" for purposes of computing the tax imposed on insurance companies. Unlike K.S.A.79-1109, K.S.A. 40-2803 and 40-2804 do not reference K.S.A. 79-32,138 or K.S.A. 1993 Supp. 79-32,117 for purposes of determining a company's income. Thus, the legislature has chosen to treat national banking associations, state banks, trust companies and savings and loan associations differently than insurance companies.
It has been held that section 1 of the Kansas bill of rights "is given much the same effect as the Equal Protection Clause of the Fourteenth
Amendment." State ex rel. Tomasic v. City of Kansas City, 237 Kan. 572,583 (1985), citing State ex rel. Tomasic v. Kansas City, Kansas PortAuthority, 230 Kan. 404, 426 (1981). The test for determining violation is likewise idential. See Leiker v. Employment Security Bd. of Review,8 Kan. App. 2d 379, 387 (1983). Because the statutes do not create a suspect or quasi-suspect classification nor involve any fundamental right, the test for determining whether the provisions are in violation of the equal protection clause of the United States constitution or section 1 of the Kansas bill of rights is whether the distinction created conceivably has a rational basis as opposed to being a purely invidious discrimination. Guardian Title Co. v. Bell, 248 Kan. 146, 155 (1991);Farley v. Engelken, 241 Kan. 663, 669 (1987). "The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective . . . A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." Guardian Title, 248 Kan. at 155, andFarley, 241 Kan. at 669, both citing McGowan v. Maryland, 366 U.S. 420,425-426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). Because we cannot conclude with any degree of certainty that there is no possible justification for the differential treatment of insurance companies and financial institutions, we cannot conclude that the statutes are violative of the equal protection clause or section 1 of the bill of rights.
Finally you question whether requiring franchise taxes be added when determining income for franchise tax purposes violates 12 U.S.C. § 548. That statute requires every national bank to be treated as a bank organized and operating under the laws of the state within which its principal office is located. Pursuant to K.S.A 79-1107, national banks and state banks are treated the same. Therefore we see no violation of12 U.S.C. § 548.
In conclusion, the tax imposed by K.S.A. 79-1107 on national banking associations and state banks located or doing business in this state is a franchise tax. K.S.A. 79-1109 requires those entities subject to the tax to add the amount of the tax paid the previous year to federal adjusted gross income for that year when determining "net income" for purposes of measuring the tax. This requirement does not result in violation of 12 U.S.C. § 3124, 12 U.S.C. § 548 or the equal protection provisions of the Kansas or United States constitutions. Failure of the department of revenue to correctly interpret the law in the past does not preclude the department from interpreting and administering it correctly now.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
RTS:JLM:jm